ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| RAMIRO CARRIÓN TORRES<br><br>Recurrente<br><br>v.<br><br>SISTEMA DE RETIRO UPR JUNTA DE RETIRO<br><br>Recurrido | KLRA202500330 | *REVISIÓN ADMINISTRATIVA* procedente del Sistema de Retiro de la UPR<br><br>Caso Núm.: 1255369<br><br>Sobre: Revisión de Cómputo de Pensión Adjudicada |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 7 de agosto de 2025.

Ramiro Carrión Torres (Carrión Torres o recurrente) nos solicita que revoquemos una *Resolución* que emitió la Junta de Retiro del Sistema de Retiro de la Universidad de Puerto Rico el 12 de diciembre de 2024, notificada el 7 de mayo de 2025[1].  Por medio de la aludida *Resolución*, la Junta de Retiro declaró *No Ha Lugar* la apelación que presentó Carrión Torres.  Con ello, reiteró la determinación del Sistema de Retiro de acreditarle 29.50 años de servicio a Carrión Torres para el cómputo de su pensión por retiro.

Por los fundamentos que exponemos, se *Confirma* la Resolución recurrida.

## I.

Surge del expediente que Ramiro Carrión Torres laboraba en la Universidad de Puerto Rico, Recinto de Río Piedras.

---

[1] Notificada nuevamente, en virtud de las instrucciones impartidas en la Sentencia que emitió el Tribunal de Apelaciones, el 24 de marzo de 2025, en la causa KLRA202500050.

Número Identificador

SEN2025_____

El 6 de diciembre de 2022, Carrión Torres le envió un correo electrónico a Abigail Casillas Betancourt, para informarle que estaba enviando documentos, a los fines de solicitar cita de orientación para la jubilación, con su intención de jubilarse a septiembre de 2024.[2] En respuesta, ese mismo día, el personal del Sistema de Retiro, le informó a Carrión Torres que se estaría citando a los participantes que solicitaron cita.[3]

El 18 de abril de 2023, Carrión Torres acudió a una cita de orientación para su retiro[4]. El 24 de abril de 2023 el recurrente sometió una carta de renuncia, con efectividad al 30 de septiembre de 2023.[5]

El 18 de julio de 2023, Marcia Enid Clemente Ayala, Secretaria Administrativa del Sistema de Retiro, le comunicó a Carrión Torres, vía correo electrónico, que recibió sus documentos y la solicitud de pensión para el 30 de septiembre de 2023. Agregó que se estaría iniciando el proceso relacionado a su solicitud.[6] El 29 de septiembre de 2023, el recurrente cesó sus funciones como empleado al acogerse al retiro.

El 14 noviembre de 2023, Magaly Díaz Solano, empleada del Sistema de Retiro de la UPR, le requirió a la división correspondiente de la UPR, una certificación de las ausencias de Carrión Torres a los fines de trabajar la petición de jubilación.[7]

El 14 de diciembre de 2023 la Oficina de Nóminas, le respondió a Díaz Solano que estaba refiriendo el análisis de las ausencias de Carrión Torres para los años 2021, 2022 y 2023.

---

[2] Apéndice, pág. 1.
[3] Íd.
[4] Recurso de Revisión de Determinación Administrativa, pág. 2, párrafo 3.
[5] Apéndice, Resolución, pág. 11.
[6] Apéndice, pág. 2.
[7] Apéndice, pág. 16.

Posteriormente, el 29 de enero de 2024, recibida el 2 de febrero de 2024, el Director Ejecutivo Interino del Sistema de Retiro le informó a Carrión Torres que su solicitud de Pensión por Edad y Años de Servicios fue aprobada, efectiva al 1ro de octubre de 2023. Le informó que el cómputo de su pensión consideró los factores básicos de: años de servicio acreditados de 29.50, la edad de 58 años y el sueldo promedio devengado según el tope salarial. Indicó que a partir del 1ro de octubre de 2023, estaría recibiendo de pensión la suma de $20,133.72 anuales, a razón de $1,677.81 mensuales. Señaló que la pensión informada podría estar sujeta a cambios, si en el futuro se determinara que era incorrecto alguno de los factores básicos utilizados.[8]

Por no estar de acuerdo, el 1ro de marzo de 2024, Carrión Torres suscribió un escrito de Apelación ante la Junta de Retiro, al que incorporó sus respectivos anejos.[9] En síntesis, alegó que el 18 de abril de 2023, la Junta de Retiro le citó a la orientación sobre el proceso de jubilación. Según planteó, allí se le informó que podía retirarse desde junio del año 2023, por haber completado los treinta (30) años de servicio. Señaló que en esa ocasión se le indicó que estaría recibiendo una cantidad de $2,267.00 mensuales, con la cual estuvo conforme por ser suficiente para atender sus compromisos económicos y familiares. Mencionó que conforme las instrucciones impartidas, el 24 de abril de 2023 sometió su carta de renuncia ante la Rectora del Recinto de Río Piedras, con efectividad al 29 de septiembre de 2023. Alegó que el 2 de febrero de 2024, recibió una carta del Sistema de Retiro en la que se le informó que a partir del 1ro de octubre de 2023, estaría recibiendo $20,133.72 anuales a razón de $1,667.81

---

[8] Apéndice del recurrente, pág. 7.
[9] Apéndice del recurrente, págs. 3-10.

mensuales de retiro, a razón de 29.6 años de servicio. Planteó que esa cantidad representa seiscientos dólares ($600) menos a los que se le había asegurado que habría de recibir al renunciar a su puesto. Adujo que el Sistema de Retiro tuvo un poco más de cinco (5) meses, previo a la renuncia para verificar, aclarar y confirmar cualquier posible situación que pudiera afectar los términos y condiciones ya informados. Adujo que, si se le hubiese informado que se había hecho un cómputo incorrecto, este hubiera cambiado la renuncia a una fecha posterior para cotizar el tiempo que faltara. Por ello, alegó que la Junta de Retiro incurrió en negligencia crasa en el desempeño de sus funciones, al brindarle la información incorrecta el 18 de abril de 2023 y al no percatarse del alegado error durante los cinco (5) meses que estuvo trabajando su caso.

El 12 de diciembre de 2024, archivada en autos el 17 de diciembre de 2024 y notificada el 7 de mayo de 2025, la Junta de Retiro emitió Resolución mediante la cual declaró *No Ha Lugar* la Apelación. En la determinación, la Junta de Retiro reconoció que Carrión Torres cumplió a cabalidad con el requisito de edad, de 58 años. No obstante, fundamentó su rechazo a la Apelación por lo siguiente:

> Asimismo, tanto de la hoja de préstamo presentada por el Apelante como del correspondiente del Detalle de Aportaciones del Sistema de Retiro-UPR surge inequívocamente que, a julio de 2015, el Apelante contaba con un total de veintidós (22) años de servicio acreditados. Asimismo, del estado de cuenta del Sistema de Retiro-UPR fechado de 30 de agosto de 2023, se desprende que, a 30 de julio de 2021, el Apelante tenía un total de veintiocho (28) años de servicio acreditados. No obstante, de un Análisis de Ausencias Descontadas fechado **15 de diciembre de 2023 y del estado de cuenta del Sistema de Retiro-UPR con fecha de 20 de diciembre de 2023 se refleja que el Sr. Carrión las siguientes ausencias**: 5 días, 6 horas y 5 minutos en enero de 2022; 5 días, 6 horas y 5 minutos en enero de 2022; 1 día en febrero de 2022; 2 días

en marzo de 2022; 7 días, 7 horas y 15 minutos en abril de 2022; y 5 horas y 29 minutos en diciembre de 2022. Huelga señalar que, para las fechas de dichas ausencias, el Apelante no contaba con balances de licencias contra las que se pudiera cargar las mismas. Así pues, las ausencias del Sr. Carrión antes relacionadas equivalen a 0.75 de años de servicios que no fueron acreditadas. **Por lo tanto, 30.25 años de servicios acumulados** - 0.75 en concepto de ausencias sin licencias = 29.50 años de servicio acreditados.

Así las cosas, al efectuar el cómputo de la pensión adjudicada al Apelante, el Sistema de Retiro-UPR cumplió cabalmente con su deber ministerial y con las disposiciones del Reglamento General de Sistema de Retiro y las certificaciones aplicables. (Énfasis nuestro).

En consecuencia, la Junta de Retiro declaró *No Ha Lugar* la apelación y ratificó la determinación del Sistema de Retiro-UPR.

Insatisfecho con la determinación, el 3 de junio de 2025, Carrión Torres, interpuso el presente recurso de Revisión Administrativa, en el que alegó que:

Erró el Sistema de Retiro de la Universidad de Puerto Rico por voz de la Junta de Retiro al determinar que la Resolución dictada está fundamentada en las disposiciones legales vigentes sin trazos de arbitrariedad, ilegalidad o irrazonabilidad.

Recibido el recurso, le concedimos a la parte recurrida hasta el 3 de julio de 2025 para presentar su posición y esta no compareció. Por tanto, damos por sometido el asunto.

**II.**

**A.**

Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, 2025 TSPR 33, 215 DPR __ (2025); Otero Rivera v.

Bella Retail Group, Inc., 2024 TSPR 70, 213 DPR ___ (2024); Voilí Voilá Corp. et al. v. Mun. Guaynabo, 2024 TSPR 29, 213 DPR ___ (2024); Hernández Feliciano v. Mun. Quebradillas, 211 DPR 99, 114 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016); Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012).

Por lo anterior, también se ha reiterado que las determinaciones administrativas están revestidas de una presunción de legalidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra; OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581, 591 (2020); Torres Rivera v. Policía de PR, supra; Trigo Margarida v. Junta Directores, 187 DPR 384, 393-394 (2012).

El criterio rector al revisar una actuación de la agencia recurrida es la razonabilidad de la acción impugnada. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra; Torres Rivera v. Policía de PR, supra.

Una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron. Benítez Nieves v. ELA et al., 202 DPR 818, 828 (2019); Torres v. Junta Ingenieros, 161 DPR 696, 712 (2004). Asimismo, se ha reiterado que "[e]l tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa". ECP Incorporated v. OCS, 205 DPR 268, 282 (2020); Otero v. Toyota, 163 DPR 716, 729 (2005). Este régimen normativo se fundamenta en el principio de la razonabilidad para

determinar si la actuación de la agencia es arbitraria, ilegal o irrazonable a tal grado que se considere un abuso de discreción. Otero Rivera v. Bella Retail Group, Inc., *supra*; Rolón Martínez v. Supte. Policía, *supra*. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Camacho Torres v. AAFET; 168 DPR 66, 91 (2006); Pro-Mej., Inc. v. Jta. De Planificación, 147 DPR 750, 761 (1999).

Así pues, la revisión judicial de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, *supra,* citando a Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012); Otero Rivera v. Bella Retail Group, Inc., *supra*; Rolón Martínez v. Supte. Policía, *supra*, págs. 35-36.

En cuanto a las conclusiones de derecho, los tribunales apelativos tienen la facultad de revisarlas en todos sus aspectos. Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales, 2025 TSPR 56, 215 DPR ____ (2025); Otero Rivera v. Bella Retail Group, Inc., *supra*; ECP Incorporated v. OCS, *supra*, págs. 281-282. Véase, además, Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9675.

Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado

administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. (Énfasis nuestro). Jusino Rodríguez v. Junta de Retiro, 2024 TSPR 138, 215 DPR ___ (2024); Hernández Feliciano v. Mun. Quebradillas, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 628.

Claro está, esto no implica que los tribunales revisores tienen libertad absoluta para descartar las conclusiones e interpretaciones de dicho organismo administrativo. Otero Rivera v. Bella Retail Group, Inc*., supra*; Otero v. Toyota, *supra*, pág. 729. Por lo tanto, la interpretación de la agencia no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública. Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 843 (2021).

**B.**

La Ley Núm. 1 de 20 de enero de 1966, Ley de la Universidad de Puerto Rico, 18 LPRA sec. 601, *et seq.*, según enmendada, [en adelante, Ley de la UPR] se creó con "el propósito de reorganizar la UPR, reafirmar y robustecer su autonomía y facilitar su continuo crecimiento". Artículo 1, Ley de la UPR.

Esta ley establece que la Universidad de Puerto Rico será gobernada por una Junta de Gobierno. Artículo 3 (A) de la Ley de la UPR, 18 LPRA sec. 602. Referida Junta de Gobierno, tiene, entre sus deberes y atribuciones, la responsabilidad de aprobar o enmendar el Reglamento del Sistema de Retiro y cualquier otro reglamento de aplicación general, sujeto a las disposiciones de la Ley de Procedimiento Administrativo Uniforme, actual Ley 38-

2017, según enmendada. Artículo 3 de la Ley de la UPR, inciso H (5), 18 LPRA sec. 602.

Para cumplir su encomienda, la Universidad de Puerto Rico, adoptó el "Reglamento General del Sistema de Retiro" de la Universidad de Puerto Rico, de febrero del año 2020, rev. a mayo del año 2021. (Reglamento de Retiro). Indica el Reglamento de Retiro que el propósito del Sistema es proveer beneficios para los funcionarios y empleados de la Universidad **contra los riesgos de edad avanzada**, incapacidad, muerte o cesantía, con el objetivo de inducir a personas idóneas a entrar y permanecer en el servicio de la Universidad contribuyendo así a una administración eficiente. Artículo 1, Sección 1 del Reglamento de Retiro. En virtud del Reglamento de Retiro, se aprobó la Junta de Retiro. Artículo 1, Secciones 2, 3 y 4 (i).

La Junta de Retiro será directamente responsable por la administración del Sistema de Retiro. Entre sus funciones se encuentran el nombrar un **Director Ejecutivo**, que será un puesto de confianza y que responderá a la Junta de Retiro, para el manejo del Sistema de Retiro. De igual forma, estará a cargo de aprobar un reglamento interno para la Junta de Retiro. Artículo XI del Reglamento de Retiro, Sección 1, incisos (b) y (g).

En cuanto al Director Ejecutivo, el Artículo XI, Sección 10, estatuye en lo aquí pertinente como sigue:

a. La administración operacional del Sistema estará a cargo de un(a) Director(a) Ejecutivo(a) el(la) cual tendrá la responsabilidad y autoridad para tomar en primera instancia todas las decisiones relacionadas con el mismo, excepto aquellas que le han sido referidas a la Junta de Retiro o que se haya reservado la Junta de Retiro. […]

b. […]

c. Deberes

[…]

(4) Actuará en la revisión**, aprobación** o rechazo de las **solicitudes de pensiones** y beneficios, así como de las solicitudes de préstamos hipotecarios o personales que radiquen los participantes del Sistema.
[…]

(6)    Someterá a la Junta de Retiro una relación de los préstamos, **de las pensiones** y beneficios aprobados.

[…]

(14) Mantendrá **a los participantes del Sistema informados sobre todas las decisiones adoptadas por la Junta de Retiro que puedan afectarles directamente**.

A su vez, la Sección 11, dispone sobre las obligaciones de la Universidad, a saber:

La Universidad deberá suministrar al Director Ejecutivo, conforme su obligación en calidad de fideicomitente, información escrita sobre: **períodos de servicio**, fecha de nacimiento, salarios, ingresos al servicio, defunciones, ceses, renuncias y cualquier otra información relacionada con los empleados que sea necesaria para el funcionamiento efectivo de las operaciones del Sistema. El pago de las anualidades y beneficios que se conceden de acuerdo con las disposiciones de este Sistema, así como el pago de las aportaciones de la Universidad necesarias para sostener el Sistema, serán obligaciones de la Universidad según aquí se definen.

Reseñadas las obligaciones de los entes que atienden los asuntos de las pensiones por jubilación, pasamos al Artículo II del Reglamento de Retiro, que rige el cómputo del crédito por servicio.

Artículo II- Crédito por Servicio

Sección 1 – Acreditación de Servicio

a.    Se acreditará como **un mes** de servicio, cualquier período en el cual el participante tenga **treinta (30) días consecutivos** de servicio dentro del año fiscal.

b.    Un participante recibirá crédito por servicio en cualquier año fiscal de acuerdo con las siguientes bases:

| Número de meses de servicio | Crédito por Servicio en un año fiscal |
| --- | --- |
| 12 | 1 año |
| 9 | ¾ año |
| 6 | ½ año |
| 3 | ¼ año |

No se concederá crédito por períodos de servicio menores de 3 meses.

c.      A pesar de las disposiciones de la subsección **a**, si durante cualquier período en el cual el participante tenga treinta (30) días consecutivos de servicio en que de otra manera debería acreditarse un mes de servicio, el participante estuviese trabajando en un empleo de jornada parcial, pero no si ha estado trabajando en ese empleo durante todo el tiempo de sus servicios en cuyo caso se aplica la subsección **a**, dicho mes de servicio se acreditará como una fracción del mes en la proporción de las horas trabajadas en relación con 30. Sin embargo, esa fracción de mes de servicio será considerada como un mes de servicio a los efectos de determinar la compensación promedio del participante.

d.      Cualquier participante que reclame crédito de acuerdo con las subsecciones de este artículo deberá radicar ante el (la) Director(a) Ejecutivo(a) del Sistema de Retiro información sobre tales servicios en la forma en que el (la) Director(a) Ejecutivo(a) determine. Una vez verificada la reclamación, el (la) Director(a) Ejecutivo(a) emitirá una certificación del período de servicio acreditado. (Certificación Núm. 14, 20182019).

Es norma reiterada que las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan. Benítez Nieves v. ELA et al, 202 DPR 818, 828 (2019); Torres v. Junta Ingenieros, 161 DPR 696, 712 (2004).  Así pues, una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron. Benítez Nieves v. ELA et al, *supra*; T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 81 (1999). A tenor con lo anterior, no pueden actuar arbitraria o caprichosamente al aplicar sus reglamentos a casos particulares. Benítez Nieves v. ELA et al, *supra*; Asoc. Fcias. Com. v. Depto. de Salud, 156 DPR 105, 136 (2002).

Por último, es norma asentada que los errores administrativos no crean derechos y pueden ser corregidos en

cualquier momento por parte del Estado.  Rivera et al. v. Torres et al., 2024 TSPR 60, 214 DPR ___ (2024); Quiles v. Del Valle, 167 DPR 458, 477 (2006).   A estos efectos, el Tribunal Supremo ha expresado en varias ocasiones que "un error administrativo no crea un estado de derecho que obligue a una agencia ni impide su corrección". González v. ELA, 167 DPR 400, 413 (2006); Santiago Declert y Albanesi v. Departamento de la Familia, 153 DPR 208, 218 (2001). Por ello, una parte no puede pretender ampararse en una actuación administrativa incorrecta. Rivera et al. v. Torres et al., *supra*; González v. ELA, 167 DPR 400, 413 (2006); Magriz v. Empresas Nativas, 143 DPR 63, 71 (1997).

A tenor con la antes mencionada normativa, resolvemos.

### III.

El recurrente Ramiro Carrión Torres afirmó que no existe controversia en ciertas determinaciones de la Junta respecto a que cumplió con el requisito de edad para acogerse al retiro.  Aludió, a la página 2 de la Resolución recurrida en la cual la Junta expresó que, "del estado de cuenta del Sistema de Retiro-UPR fechado de 30 de agosto de 2023, se desprende que a 30 de julio de 2021, el apelante tenía un total de veintiocho (28) años de servicios acreditados".[10] Indicó que esta expresión de la Junta confirma que las partes entendían que al 30 de septiembre de 2023 el recurrente habría acumulado en exceso los treinta (30) años de servicio.[11]

El recurrente alegó que el cómputo de los años por servicio se realizó a base de un informe preparado durante el mes de diciembre de 2023, que es, dos (2) meses después de que cesó sus funciones.  Explicó que, desde el 18 de julio de 2023, la

---

[10] Recurso de Revisión de Determinación Administrativa, pág. 5.
[11] Recurso de Revisión de Determinación Administrativa, pág. 2.

recurrida tenía el control del trámite de la solicitud de retiro del recurrente. Que la certificación de ausencias era una información vital para el cómputo correcto de los años cotizados. Señaló que su patrono no solicitó la información de los años de servicios oportunamente, sino que lo hizo el 14 de noviembre de 2023 y la información le fue suministrada el 14 de diciembre de 2023, a treinta (30) días de solicitada, y luego de la renuncia del recurrente. Expresó que el deber ministerial de la recurrida no se limitaba a realizar unos cómputos matemáticos, los cuales dio por correctos, sino que tenía que realizarlos **previo** a la salida del recurrente por constituir una parte vital de una orientación adecuada. Señaló que la recurrida incurrió en crasa negligencia en el trámite de una pensión vitalicia. A su vez indicó que no se le orientó adecuadamente ni se le citó para informarle que le faltaba tiempo para cotizar los treinta (30) años de servicio. Ello para que el empleado pudiera determinar si continuaba con su intención de retirarse o si permanecía en el empleo, a los fines de cotizar el tiempo que le faltaba. Señaló que la recurrida no le brindó esa oportunidad, en violación a su debido proceso de ley. Que el incumplimiento de la recurrida con su deber ministerial provocó que su salario mensual fuera menor.

Disponemos.

De los hechos aquí reseñados surge que el 18 de julio de 2023, la sección de beneficios del Sistema de Retiro de la UPR recibió la solicitud de pensión de Carrión Torres, con efectividad al 30 de septiembre de 2023.

Luego de advenir efectiva la renuncia de Carrión Torres, el 14 de noviembre de 2023, la Sección de Beneficios del Sistema de Retiro de la UPR solicitó una Certificación de Ausencias del recurrente para los periodos 2021-22 y 2022-23, con el fin de dar

continuidad a la petición de jubilación de Carrión Torres. La División de Nóminas de la UPR contestó este petitorio el 14 de diciembre de 2023. Tras ello, el 2 de febrero de 2024, el Director Ejecutivo del Sistema de Retiro le informó al recurrente, que recibiría de pensión la cantidad de $1,677.81 mensuales. Ello, en consideración a sus cincuenta y ocho (58) años de edad, su salario promedio y los veintinueve punto cincuenta (29.50) años de servicio acreditado.

En desacuerdo, Carrión Torres, solicitó revisión, porque entendía que a la fecha de su retiro contaba con treinta (30) años de servicio. Aludió a que la determinación para retirarse, al 30 de septiembre de 2023, obedeció a la información que le brindó el personal encargado de evaluar los expedientes de personal. Indicó que el Sistema de Retiro tuvo cinco (5) meses para evaluar, verificar, confirmar y aclarar cualquier situación que pudiera afectar los términos de su retiro. Afirmó que, si se le hubiese indicado que había un error en el cómputo, este hubiese tenido la oportunidad de cambiar la renuncia a una fecha posterior.

La Junta de Retiro respondió con la Resolución que revisamos. En esta, confirmó los 29.50 años de servicio de Carrión Torres, a tenor con un documento de *Análisis de Ausencias Descontadas*, del 15 de diciembre de 2023 y a un estado de cuenta del Sistema de Retiro de la UPR, con fecha de 20 de diciembre de 2023, los que reflejaban las ausencias en el año 2022.

De lo anterior surge que el Sistema de Retiro de la UPR realizó los trámites para obtener una Certificación de Ausencias del recurrente, luego de la fecha de efectividad de la jubilación de este. Sin embargo, la dilación en efectuar el cómputo de los años de servicio no alteró el hecho de que Carrión Torres solo contaba con 29.50 años de servicio a la fecha 30 de septiembre de 2023.

La Junta explicó que los años de servicio fueron computados luego de descontar las ausencias que tuvo el recurrente durante distintos meses en el año 2022. Este cómputo no está en controversia.

Ahora bien, aun cuando la Junta de Retiro es el ente responsable de gestionar oportunamente todo lo relacionado a la petición de retiro de un empleado, ello no eximía al empleado de su deber de obtener una certificación de ausencias de su patrono, previo a su renuncia. Esto es, el recurrente no podía descansar únicamente en el trámite de la agencia, sino que debió efectuar sus diligencias para asegurarse de que cumplía con el criterio de años de servicio. Ello era esencial, para efectos del cómputo de la pensión vitalicia que este recibiría. Más aún cuando, las ausencias que afectaron sus años de servicio fueron por distintos periodos del año 2022, por lo cual tuvo tiempo suficiente para corroborar esa información.

En virtud del análisis antes expuesto, declinamos intervenir en la decisión administrativa recurrida. No quedó demostrado que el organismo recurrido actuó de forma arbitraria, irrazonable o ilegalmente. Jusino Rodríguez v. Junta de Retiro, *supra*.

**IV.**

Por las razones que anteceden, *Confirmamos* la Resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones